UNITED STATES of America, Appellee,

v.

Richard I. HOROWITZ, Appellant.

No. 85–5253.

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1986.

Decided Dec. 9, 1986.

---

Jacob A. Stein (John A. Pirko; Stein, Mitchell & Mezines on brief) for appellant.

Brenda Gruss (Justin W. Williams, Acting U.S. Atty.; Janet D. Webb; Thomas H. McQuillan, Third Year Law Student on brief) for appellee.

Before WINTER, Chief Judge, and RUSSELL and PHILLIPS, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The defendant, Richard I. Horowitz, appeals from the trial court's denial of his pre-trial motion to suppress evidence obtained by authorities pursuant to an authorized search of the premises of Electro-Methods, Inc. (EMI), a Connecticut corporation which contracted for defendant's services. The defendant was employed by Pratt & Whitney Aircraft (Pratt) as supervisor of pricing in its Government Products Division in North Palm Beach, Florida. In this role the defendant oversaw preparation of sealed bids which Pratt submitted to the Air Force for supplying spare parts for the F-100 jet engine. EMI was among several companies competing with Pratt for the Air Force contract.

In 1978, unbeknownst to Pratt, the defendant, while still employed by Pratt; es-

tablished an independent consulting firm, Sandrich Associates, Inc., which was operated from his Florida home and which advised clients on government contracting and on pricing of aircraft parts. Two of these clients were Perry Oceanographics and Lenzar Optics. The defendant's primary client, however, was EMI, which was owned by Alfred Stanger. Stanger also owned Turbo Tech, Inc., which represented Fabrique Nationale and N.V. Philips in their efforts to compete with Pratt for the Air Force F–100 spare parts contracts. The defendant, until 1982, failed to report the existence of his consulting contracts to Pratt on the conflict of interest statements Pratt annually required of its employees.

In his role as "consultant" to EMI, the defendant sold to Alfred Stanger confidential Pratt pricing information which EMI used to underbid Pratt on the Air Force contracts. Stanger paid the defendant as much as $5,000 per month for his so-called "consulting services", reaching a total of $260,000. In 1982, Stanger installed a computer terminal and telephone modem in the defendant's Florida home to facilitate communication between the defendant and EMI's Connecticut office. The defendant transmitted the pricing information to EMI's computer terminal where the information was then stored on EMI's tapes.

On June 8, 1983, agents of the FBI executed a search warrant at EMI, having alleged in an affidavit probable cause to believe that Pratt pricing information was held by EMI on computer magnetic storage devices. The warrant authorized the agents to search a one-story industrial-commercial building housing EMI and to seize property listed on an attached schedule including computer magnetic storage devices, computer keypunch cards and computer print-outs containing Pratt pricing material. The agents, to prevent erasure of on-line tapes and discs (tapes), seized all of the tapes in EMI's computer room, including stored back-ups, and later examined them on outside compatible computer terminals with the aid of an expert. The contents of a tape could not be discerned from visual inspection but required special-

ized programming to review and record the information contained on the tapes. The agents looked specifically for a file designated RER which they believed contained the price data and for files containing messages between Stanger and the defendant.

In a subsequent proceeding brought by the government to suspend EMI from bidding on Air Force contracts, the defendant filed two sworn affidavits before the Air Force Debarment, Suspension and Review Board stating that he did not supply EMI with secret Pratt pricing information. Those affidavits conflicted with the evidence seized at EMI and the defendant was indicted on two counts of making false statements to the board in violation of 18 U.S.C. 1001 (1982 & Supp. III 1985). Prior to trial, the defendant challenged the admissibility of the seized evidence on fourth amendment grounds. The trial judge denied his motion to suppress the evidence for lack of standing to contest the search and the defendant was convicted. On appeal the defendant challenges only the court's denial of his motion to suppress.

■ The defendant can contest the search and seizure on fourth amendment grounds only if "the disputed search and seizure has infringed an interest of the defendant which the fourth amendment was designed to protect." *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). The Supreme Court has articulated the appropriate inquiry to be whether the individual had a reasonable expectation of privacy in the area searched, not merely in the items found, *Rawlings v. Kentucky*, 448 U.S. 98, 104–06, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980) and the burden is upon the defendant to prove his reasonable expectation of privacy. *Rakas*, 439 U.S. at 130, n. 1, 99 S.Ct. at 424, n. 1.

The defendant claims he had a reasonable expectation of privacy in the seized tapes storing the information he supplied to EMI. He alleges that for purposes of his fourth amendment challenge the search at issue was not the search of EMI's build-

ing, but was the search of the "intangible space where images and sounds are recorded in a computer memory disc or tape." Appellant's brief at 12. The defendant relies on Supreme Court decisions finding reasonable expectations of privacy in one's office, *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), and in other areas beyond the home, *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (footlocker transported by rail), to support his novel argument that certain tapes seized on EMI's premises constituted his "electronic file cabinet," an extension of his private home office, and that the government agents violated his reasonable expectation of privacy in the tapes by playing them without obtaining a second search warrant. The government contends that the tapes were EMI's electronic records properly seized and later inspected pursuant to the search warrant. The government argues that the defendant had no reasonable and legitimate expectation of privacy in either the tapes or in EMI's premises.

The factors we must use to determine whether the defendant retained a reasonable expectation of privacy in the computer tapes can be stated generally as an analysis of the defendant's interest in and control of the area searched, his subjective expectation of privacy in the area as evidenced by his efforts to ensure that privacy, and society's willingness to recognize his expectation as reasonable. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Manbeck*, 744 F.2d 360 (4th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985); *United States v. Dart*, 747 F.2d 263 (4th Cir.1984); *United States v. Torch*, 609 F.2d 1088 (4th Cir.1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). We agree with the trial court that the defendant had no reasonable expectation of privacy either in EMI's premises *or* in the tapes seized and played by the government.

■ The defendant claims that he had a privacy interest in the tapes storing the information he had transmitted to EMI because they constituted his workplace in that he maintained an ongoing relationship with EMI and a continuing interest in the material on the tapes, his work product. We disagree. The tapes may indeed have constituted an "electronic filing cabinet," but that filing cabinet belonged to EMI and was maintained by EMI for its own use. The defendant sold information to EMI and, once paid for, that information belonged to EMI, as did the tapes upon which the information was stored and the building in which the tapes were kept. "Property rights, while not determinative, remain conceptually relevant to whether one's expectations are legitimate or 'reasonable.' " *United States v. Givens*, 733 F.2d 339, 341 (4th Cir.1984). And as the Supreme Court reiterated in *Rakas*, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134, 99 S.Ct. at 425, *citing Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). The defendant has failed to show even a tenuous privacy interest in the tapes for he never owned or possessed them, was rarely if ever physically present at EMI, was assigned no office at EMI's headquarters, and was hundreds of miles away when the search and seizure took place. *See United States v. Torch*, 609 F.2d 1088 (4th Cir.1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980).

The tapes merely stored for EMI's benefit, information transmitted by the defendant which, once recorded, could not be further manipulated by the defendant, albeit he could review the information from his home terminal. The defendant did not have an indelible privacy interest in the information. Having sold the information, the defendant lost any interest in it and EMI could use the information for any business purpose it pleased. Thus, the defendant's claim that the tapes were merely an electronic extension of his office fails because he cannot demonstrate a sufficient

1226

*nexus* between the area searched and his workplace in Florida, *United States v. Britt*, 508 F.2d 1052, 1056 (5th Cir.1975), *cert. denied*, 423 U.S. 825, 96 S.Ct. 40, 46 L.Ed.2d 42 (1975).

 Since the defendant has proved no interest in the tapes, the information recorded on them, or in the premises upon which the tapes were stored, for this reason alone the defendant's claim must fail. But the defendant has also failed to prove that he had any control over the tapes. Control is measured by physical presence in, or access to the area to be searched, *Torch*, 609 F.2d at 1091, and by the ability to exclude others. *Givens*, 733 F.2d at 342. Although an individual need not maintain absolute personal control (exclusive use) over an area to support his expectation of privacy, "occasional presence, without any right to exclude others, is not enough." *Torch*, 609 F.2d at 1091. The defendant lacked any ability to exclude others from the tapes; on the contrary, his own access was controlled by EMI. The defendant had no keys to either EMI's building or EMI's computer room. His only access to the RER file was by an electronic hookup through the use of a password. But employees of EMI could bar his access simply by removing the tapes from the computer or by changing the password. The defendant could not effectively exclude anyone from access to the tapes since any of several EMI employees knowing the password could give it to others and any employee with a key to the computer room could remove the tapes. Indeed, the defendant's very purpose in making the transmissions to EMI was to enable the employees of EMI to use the information in preparation of EMI's bids so that EMI could unfairly compete with Pratt, the defendant's employer. Thus, the information was necessarily disseminated to others within EMI and any security measures taken by EMI to restrict access primarily benefitted EMI and only incidentally the defendant.

The defendant's reliance on *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) is misplaced. In *Man-cusi*, the Court determined that a union official had a reasonable expectation of privacy in his work office even though he shared the office with other union officials and even though the files seized by the government belonged to the union rather than to Mancusi. But unlike the defendant in the case before us, Mancusi was present in his office when the search occurred and only he and a few co-officials had access to the seized files. Thus, for the reasons stated earlier, *Mancusi* is inapposite to the case before us. In short, the defendant has shown neither an interest in nor control over the area searched.

 Although the defendant may well have wished to conceal his egregious perfidy from his employer, as would any person wrongfully selling his employer's secrets, his willful disclosure to EMI vitiates any reasonable expectation of privacy he may have once had. Assurances by Stanger as to EMI's limited use of the information could not sustain a Fourth Amendment interest. *See United States v. Miller*, 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1973). "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas*, 439 U.S. at 144, n. 12, 99 S.Ct. at 430, n. 12. The defendant has failed to show any source of legitimation in this case; therefore, we affirm the decision of the trial court.

Since we agree with the trial court that the defendant had no reasonable expectation of privacy in EMI's tapes nor in the premises searched, we, like the trial judge, need not consider whether the warrant was sufficient to encompass the seizure and search of the tapes. We do, however, believe that it was adequate.

Accordingly, the judgment of the district court is

AFFIRMED.