51 F.3d 269
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge ROBLES, Defendant-Appellant.
 No. 94-5276.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 14, 1995.
Decided April 6, 1995.
 
 Martin P. Sheehan, Sheehan & Nugent, Wheeling, WV, for appellant. William D. Wilmoth, United States Attorney, Paul T. Camilletti, Assistant United States Attorney, Wheeling, WV, for appellee.
 Before WIDENER and WILLIAMS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Jorge Robles pled guilty to conspiracy to possess with intent to distribute and to distribute marijuana, 21 U.S.C.A. Sec. 846 (West Supp.1994), reserving the right to contest the denial of his motion to suppress evidence seized from his rental car and the garage in which it was parked when he was arrested. He appeals his conviction on the ground that the district court erred in denying his motion to suppress. He also appeals his 41-month sentence, contending that the district court clearly erred in denying him adjustments for minimal role and for acceptance of responsibility. United States Sentencing Commission, Guidelines Manual, Secs. 3B1.2(a), 3E1.1 (Nov.1993). We affirm.
 
 
 2
 In 1992 and 1993, agents of the California Bureau of Narcotics Enforcement (BNE) and the United States Customs Service were investigating narcotics trafficking by Carlos Cazessus-Sandes. The BNE was aware that cocaine, heroin, and marijuana imported through Mexico were transported by Sandes within the United States in motor homes. A confidential informant (CI-2) had agreed to drive a motor home for Sandes from California to El Paso, Texas, and then to Pittsburgh. At the last minute CI-2 backed out, and the motor home was driven instead by Ron and Anna Estrada. It was under constant surveillance through an electronic tracking device placed on the motor home. In El Paso, defendant Jorge Robles and Sandes were observed and filmed loading suitcases into the motor home. On the basis of information from CI-2 which turned out to be in error, the Customs Agents believed that the suitcases contained cocaine.
 
 
 3
 Robles and Sandes then flew to Chicago, where Robles rented a light blue Oldsmobile which he and Sandes drove to Wheeling, West Virginia. There they met the Estradas at a motel. On November 3, 1993, Robles and Sandes were observed moving two apparently heavy suitcases from the motor home into the rental car. The next morning, November 4, 1993, co-conspirator Eric Walton, a resident of Wheeling, arrived at the motel.
 
 
 4
 Walton drove the rental car to a large windowless garage near his home. While Sandes remained at the motel, Robles and co-defendant Gino Biffi followed Walton in another car and parked on the street near the garage. Co-conspirator Harry Walton backed the rental car into the garage after co-conspirator Cliff Sligar opened the door; this occurred while Robles and Biffi were engaged in parking their car and walking toward the garage. After Biffi and Robles entered the garage, the Waltons and Sligar went outside and were immediately arrested.
 
 
 5
 Robles and Biffi remained inside the garage with the rental car. The garage was under surveillance by approximately six or seven agents from the BNE and the United States Customs Service, as well as officers of the Ohio Valley Drug Task Force, and a helicopter. Fearing that they would lose control of the situation because the drugs were out of sight, Customs Agent Lacy and at least one other officer entered the garage and arrested Robles and co-defendant Gino Biffi. The agents then left the garage to await issuance of a search warrant. While he was in the garage, Lacy saw bricks of marijuana which he described in a telephone conversation with Customs Agent Cottman, who was completing the search warrant affidavit at the time. The search warrant affidavit presented to the magistrate judge stated that:
 
 
 6
 Special Agent Lacy knocked on the door of the garage, in order to secure the premises pending issuance of a search warrant and to ensure the safety of fellow agents. In answer to Special Agent Lacy's knock, the door to the garage was opened by one of the occupants whereupon Special Agent Lacy could observe the light blue Oldsmobile with its trunk lid open, bricks of what appeared to be marijuana stacked against the wall. Thereupon, the premises were secured.
 
 
 7
 After warrants to search the garage and the rental car were issued and executed, 160 pounds of marijuana were recovered. Five marijuana bricks were on a scale, several more were in a suitcase which was open on the floor, and the rest were in the other suitcase which was still in the trunk of the rental car.
 
 
 8
 Robles and his co-defendants sought to suppress the evidence seized from the garage and the rental car. A lengthy suppression hearing was held in December 1993, at which the government argued that the agents' initial entry into the garage was justified by exigent circumstances. In January 1994, Robles entered a guilty plea, but reserved his right to appeal an adverse ruling on his suppression motion. Robles maintained that he was traveling around the country with Sandes in search of bull semen and cold-resistant grass seed for his ranch in Mexico, and was only present in the garage by happenstance.
 
 
 9
 The magistrate judge recommended that Robles' motion to suppress be denied because he lacked a reasonable expectation of privacy in the garage or the rental car, and thus did not have standing to challenge the search of either. However, the magistrate judge recommended that the marijuana which was in plain view when Lacy first entered the garage be suppressed on the ground that there were no exigent circumstances which excused the initial warrantless entry. Both Robles and the government objected to the recommendations.
 
 
 10
 After de novo review, the district court agreed with the magistrate judge that Robles lacked any reasonable expectation of privacy in the car or the garage. Rakas v. Ilinois, 439 U.S. 128, 143 (1978) (Fourth Amendment protects against unreasonable searches in areas where a person has a reasonable expectation of privacy); Rawlings v. Kentucky, 448 U.S. 98, 104 (1980) (defendant has the burden of showing that he has a reasonable expectation of privacy in the area searched). The court also agreed that there were no exigent circumstances to justify the warrantless entry.* However, it held that none of the evidence from the garage need be suppressed because probable cause to search the garage was present even without the tainted information gained during the initial entry. See Murray v. United States, 487 U.S. 533, 542 & n. 3 (1988). The court found that a valid warrant could have been issued based on information from an independent source, i.e., information gained in the prior investigation of Sandes.
 
 
 11
 We first review de novo the district court's legal determination that Robles had no reasonable expectation of privacy in the areas searched. United States v. Ramapuram, 632 F.2d 1149, 1155 (4th Cir.1980), cert. denied, 450 U.S. 1030 (1981). With respect to the rental car, the district court applied the test set out in United States v. Horowitz, 806 F.2d 1222, 1225 (4th Cir.1986), which looks to the defendant's interest in and control of the area, that is, his subjective expectation of privacy as evidenced by his efforts to ensure his privacy, and to society's willingness to recognize the defendant's expectation as reasonable. The court recognized that a person who rents a car and allows others to use it may retain a reasonable expectation of privacy, if he takes precautions to maintain his privacy and retains the right to exclude others. United States v. Kye Soo Lee, 898 F.2d 1034, 1038 (5th Cir.1990) (defendant padlocked cargo hold of rented truck before turning it over to another driver). However, it also noted that a renter who gives away his only set of keys without taking any steps to maintain control has given up a reasonable expectation of privacy. United States v. Blanco, 844 F.2d 344, 349 (6th Cir.), cert. denied, 486 U.S. 1046 (1988).
 
 
 12
 According to Robles' testimony at the suppression hearing, Sandes gave the keys to the rental car to Eric Walton with Robles' permission. As Walton drove to the garage, Robles followed Walton in another car with Biffi. Robles testified that he did not know Walton and did not know where they were going. Moreover, Robles testified that while he was in the garage, he was occupied with looking over Walton's boat, which was parked there, and paid no attention while the trunk of his rental car was opened. Robles said he was not sure whether Biffi or Walton opened the trunk and began unloading the marijuana. The district court found that Robles had given control of the rental car first to Sandes, without restrictions on its use, and then had allowed it to be driven to the garage by a person whom he did not know--Eric Walton.
 
 
 13
 Robles contends on appeal that he never gave up a reasonable expectation of privacy in the rental car, as evidenced by the fact that he stayed with the car to keep an eye on it. He compares himself to the defendant Fresneda in Blanco, who had a reasonable expectation of privacy in a borrowed rental car when he locked the car, kept the keys, and "was able to keep a watchful eye [on the car] from his hotel room." 844 F.2d at 349. However, although Robles remained with the car, he had clearly given up control over it. According to his testimony, he had no control over, and no particular interest in the car or its contents when the agents first entered the garage. Therefore, the district court correctly found that Robles lacked a reasonable expectation of privacy in the car and could not challenge the search of the car.
 
 
 14
 Robles argues that his privacy interest in the rental car created a zone of privacy around the car when it was placed in the windowless garage. He claims that he therefore had standing to challenge the search of the immediate area around the car where some of the marijuana had been placed. Under Minnesota v. Olson, 495 U.S. 91, 98-100 (1990), an overnight guest has a reasonable expectation in his host's home which is protected by the Fourth Amendment. A casual visitor has a lesser expectation of privacy, but may also challenge a search if his own property is seized. Rakas, 439 U.S. at 142 n. 11. Because Robles had no privacy interest in the rental car, did not know who owned the garage, and had been in it less than five minutes when the initial entry took place, the district court correctly ruled that he had no expectation of privacy in any part of the garage.
 
 
 15
 Robles also takes issue with the district court's finding that a valid warrant could have been obtained without the tainted information. Robles claims that the district court erred in refusing to consider evidence that CI-2 was unreliable, and that the affidavit supporting the search warrant was recklessly prepared. Evidence discovered during an illegal search need not be suppressed if it is later lawfully seized pursuant to a warrant resulting from an independent source of information. The unlawful seizure must have no effect on the decision to seek a warrant or the issuance of the subsequent lawful search warrant. Murray, 487 U.S. at 542 & n. 3.
 
 
 16
 Here, the district court found that, under Murray, even if Robles could challenge the search, his challenge should fail. The court found that (1) the decision to get a warrant for the place where the drugs ended up had been made before the initial illegal entry into the garage, and (2) excluding the paragraph describing what Agent Lacy saw on his initial unlawful entry into the garage, there was probable cause to search the garage and the rental car based on information acquired before entry into the garage.
 
 
 17
 Robles does not seriously challenge this ruling. He argues instead that the search warrant was improperly issued because the affidavit supporting it was recklessly prepared in that information which might have caused the magistrate to question the reliability of CI-2 was omitted. He cites information gleaned during the suppression hearing that BNE agents had considered but decided against paying CI-2 because she backed out of driving the motor home for Sandes, some extraneous matter on a tape of a recorded conversation, references to Colombians, and some minor factual errors in the affidavit prepared by Agent Cottman.
 
 
 18
 If a defendant makes a substantial preliminary showing that exculpatory information was omitted from a search warrant affidavit to mislead, or in reckless disregard of whether the omissions would mislead the magistrate judge, a hearing may be held pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to determine whether the search warrant must be voided. United States v. Colkley, 899 F.2d 297, 300 (4th Cir.1990). The showing must be more than conclusory and must be accompanied by a detailed offer of proof. Id. The omitted information must be necessary to the finding of probable cause, not merely relevant. Id. at 301. At the suppression hearing, Agent Proveaux of the BNE testified that CI-2 did not provide false information and that they had been able to corroborate most of the information she gave. Consequently, the district court correctly found that Robles had not made the required showing. We find that the district court did not err in denying his motion to suppress.
 
 
 19
 Finally, Robles contests his sentence. At his sentencing hearing, Robles argued that he should receive a 4-level reduction for having a minimal role in the offense under guideline section 3B1.2(a), and a 3-level reduction for acceptance of responsibility under section 3E1.1(b). The district court ruled against Robles on both issues. A defendant seeking application of a mitigating factor has the burden of showing by a preponderance of the evidence that it applies. United States v. Urrego-Linares, 879 F.2d 1234, 1239 (4th Cir.), cert. denied, 493 U.S. 943 (1989).
 
 
 20
 In support of his request for a reduction for minimal role, Robles asserted that he had no idea he was involved with drug trafficking until Biffi came to the motel room Robles shared with Sandes the night before the arrests, and he saw a package containing marijuana. At the sentencing hearing, Sandes' attorney testified that Sandes had given the same account to authorities. However, the district court did not find it credible. Its factual determination that Robles' involvement was more extensive than he was willing to admit is not clearly erroneous.
 
 
 21
 Robles argued at sentencing that he had truthfully admitted a very limited involvement in the offense. Finding again that Robles' explanation of his conduct was not credible, the district court found that Robles had not fully acknowledged his criminal conduct, and thus had not demonstrated acceptance of responsibility. A defendant has the burden of demonstrating by a preponderance of the evidence that he is entitled to the adjustment. United States v. Harris, 882 F.2d 902, 907 (4th Cir.1989). The court's factual determination was not clearly erroneous.
 
 
 22
 The conviction and sentence are therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 23
 AFFIRMED.
 
 
 
 *
 Although the government argues on appeal that exigent circumstances were present, we need not reach the issue