**The UNITED STATES of America, Plaintiff,**

v.

**Jason Florencia GORDON, Defendant.**

**No. Crim.A. 2:99CR71.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 23, 1999.

Kevin M. Comstock, U.S. Attorney's Office, Norfolk, VA, for plaintiff.

Jeffrey A. Swartz, Rabinowitz, Rafal, Swartz, Taliaferro & Gilbert, Norfolk, VA, Jennifer Elyce Tope Stanton, J.T. Stanton, P.C., Norfolk, VA, for defendant.

## *OPINION AND ORDER*

MORGAN, District Judge.

This matter comes before the Court on the Defendant's Motion to Suppress the physical evidence seized by the Government and the statements the Defendant

made to the Government after they had seized the physical evidence ("Motion to Suppress"). After a hearing on August 2, 1999, the Court **DENIED** the Defendant's Motion to Suppress the physical evidence and the Defendant's statements. This Opinion and Order further explains the Court's ruling.

## I. *Procedural History*

On April 22, 1999, the United States filed a Two–Count Indictment against the Defendant, Jason Gordon ("Defendant"). Count One charges the Defendant with Possessing Counterfeit United States Currency, in violation of 18 U.S.C. § 472, and Count Two charges the Defendant with Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841. An agreed to Discovery Order was entered on April 30, 1999, and the Defendant was denied bail by written Order of May 3, 1999. The Defendant's retained counsel withdrew on June 21, 1999, and new counsel was appointed to represented him.

On June 28, 1999, the Government filed a superseding Indictment against the Defendant with four additional counts. The Superseding Indictment charges the Defendant with the following: Possessing Counterfeit United States Currency (Count 1); Use of a False Identification Card in Interstate Commerce, in violation of 18 U.S.C. § 1028 (Count 2); Use of a Counterfeit and Unauthorized Access Device in Interstate Commerce, in violation of 18 U.S.C. § 1029 (Count 3); Possession with Intent to Distribute Cocaine Base (Count 4); Possession of Marihuana, in violation of 21 U.S.C. § 844 (Count 5); and Falsely Representing a Social Security Number, in violation of 42 U.S.C. § 408 (Count 6). On July 14, 1999, the Defendant filed a Motion to Suppress the physical evidence seized in this case and his statements to police, alleging that the police violated his Fourth Amendment rights to be free from unreasonable searches and seizures. On July 15, 1999, the Government filed its Response to the Defendant's Motion to Suppress ("Response"). The Court held a hearing on this Motion on August 2, 1999.

## II. *The Defendant's Allegations in Support of His Motion to Suppress*

The Defendant's Motion to Suppress alleges that he presented at Sentara Norfolk General Hospital ("Hospital") on March 1, 1999, with a gunshot wound to the chest. While in the Emergency Room, the Defendant was questioned by Detective Goldberg of the Norfolk Police Department about the shooting. The Defendant testified that he gave the keys to his Thrifty rental car ("Thrifty rental car" or "the rental car") to a hospital nurse with specific instructions to give those keys to his girlfriend who would soon arrive at the Hospital. The Defendant alleges that Detective Goldberg later obtained those keys from the nurse without his permission. The key chain had Virginia plate YVV4192 documented on it. Later, Goldberg and another detective allegedly located the Thrifty rental car in the parking lot and determined that the car was locked. One of the Detectives shined a flashlight in the car and saw a leather jacket, a spent shell casing, and some money on the floorboard of the car. Using the keys, Detective Goldberg entered the car without the permission of the Defendant. Inside the vehicle he found genuine United States currency, cocaine, and marihuana in the jacket, a wallet with an identification card in the name of Richard Williams, but with the Defendant's picture, and counterfeit money on the front passenger side floorboard.

The Defendant contends that *United States v. Wellons,* 32 F.3d 117, 119–20 (4th Cir.1994), is not controlling because that case held that an unauthorized driver of a rental car has no expectation of privacy in the rental car. The Defendant also contends that even though he rented the car under the false name, Richard Williams, he was the authorized driver of the rental car. The Defendant admitted in his testimony at the hearing that his driver's license was suspended, and he needed false identifica-

tion to rent a motor vehicle. He claims he had a privacy interest in the rental car and standing to contest the search of it. Furthermore, the Defendant contends that nothing in plain view from outside the rental car could possibly have given Detective Goldberg probable cause to believe that it contained evidence of a crime. Therefore, the officers should have obtained a warrant to search the rental car because there was no danger that it would disappear. In support of this contention, the Defendant alleges that the police had the only keys to the rental car and that he was in surgery with a gunshot wound to the chest. The Defendant asks the Court to suppress the items found in the rental car as unlawfully obtained in violation of the Fourth Amendment of the United States Constitution. The Defendant also asks the Court to suppress the statements made by him after the search of the rental car as derivative evidence obtained from an illegal search or the fruit of the poisonous tree.

### III. *The Government's Allegations in Opposition to the Motion to Suppress*

The Government alleges a different version of events. First, they allege that the Defendant obtained a New Jersey driver's license under the name of Richard Williams on July 10, 1998. Almost a year later, on February 23, 1999, the Defendant rented a car from the Virginia Thrifty Rental Car Company under the name of Richard Williams. Then, on March 1, 1999, the Defendant was shot by an unknown assailant and presented at the Hospital. The emergency room doctors began treating his gunshot wound at 10:22 p.m., and the Defendant identified himself to the Hospital staff as Jason Gordon. Two detectives, Goldberg and Alsup ("the Detectives"), arrived at the hospital at 10:24. Per standard police procedure, the Detectives questioned the Defendant in the trauma bay, and they allege that he was alert and coherent. The Defendant told the Detectives he was Jason Gordon, provided other identification information, and stated

that he had been shot after a robbery in the 7–11 parking lot near Park and Brambleton Avenues in Norfolk, Virginia. The Defendant alleged that the assailant had taken a green leather jacket, a wallet, and $40.00 in currency. He further stated he could identify the assailant.

At 10:44 p.m., the Defendant was taken into the operating room. The Detectives collected a bloody sweatshirt and a set of Thrifty rental car keys. After the Detectives determined that the Defendant had survived the surgery, they left the Hospital and proceeded to the 7–11 to investigate the robbery and shooting. At the 7–11, the Detectives found no witnesses, no sign of a crime, and no rental car matching the license number on the key chain. Upon their return to the Hospital parking lot, the Detectives noticed a Thrifty rental car with plates matching the key chain. The Detectives approached this car, shined a flashlight inside, and observed the leather jacket the Defendant alleged had been stolen. They also observed a spent gun shell casing and a large sum of money on the floor. The car was locked.

The Detectives concluded that probable cause existed to believe that the car contained evidence of a crime, and that it might be a movable crime scene. Opening the car, the Detectives found a large sum of what appeared to be counterfeit currency on the floor, along with a spent shell casing. The leather jacket had a bullet hole located in a position corresponding to the location of the Defendant's wound. Inside the jacket, the Detectives found crack cocaine, marihuana, and genuine United States currency through which the bullet had traveled before wounding the Defendant. In the glove compartment, the Detectives found a cellular phone and a black wallet with an identification card bearing Richard Williams name and the Defendant's picture. The Detectives called for backup, and a crime scene unit later processed the evidence seized from the rental car.

Detective Goldberg then interviewed the Defendant's girlfriend, who was at the hospital. She stated she had last seen the Defendant at 8:00 p.m. with another man. She further described the leather jacket found in the car as the one the Defendant was wearing at 8:00 p.m. At 2:00 a.m., the Detectives questioned the Defendant, who was then in the recovery unit in stable condition. At that time, he stated that the stolen jacket was red, that his wallet was taken, and that the event happened at Kimball Terrace in Norfolk. He also gave a different description of the assailant and recounted the robbery differently. Another detective approached the Defendant and said "Mr. Williams," and the Defendant responded. The Defendant was then arrested. Further investigation revealed that an individual named Richard Williams was incarcerated in New York. Norfolk employees of the Thrifty Rental Car Company of Virginia identified the Defendant as the individual who rented the car in the name of Richard Williams. The Defendant's fingerprints identified him as Jason Gordon.

At the hearing the Government presented one witness, Avilam Casey, a station manager for Thrifty Rental Car Company of Virginia. Casey testified that Thrifty requires that customers provide a valid driver's license and credit card prior to renting a car. He further testified that Thrifty's policy is not to rent to individuals with false identification. On March 4, 1999, Casey picked the Defendant out of a photographic lineup as the man who rented the car under Richard Williams' name.

The Government contends that the Court should deny the Motion to Suppress on three grounds. First, the Government argues that the Defendant does not have standing to challenge the search because he committed fraud to rent the car under a false name. Because the Defendant rented the car under a false name, he was not authorized by Thrifty Rental Car Company to drive the car, and thus did not have an expectation of privacy in the car. Second, the Government argues that the Defendant's gunshot wound, his false story

explaining how he was shot, and the items in plain view from outside the car, all provided the Detectives with probable cause to search the car for evidence of a crime. Finally, the Government also argues that the vehicle was a crime scene processed before towing, that an inventory search was appropriate, and that if the vehicle had been taken into custody, the items would have been inevitably discovered.

### Analysis—The Defendant's Standing To Challenge the Search

The "exclusionary rule's benefits only run to those whose Fourth Amendment rights have been violated." *United States v. Givens*, 733 F.2d 339, 341 (4th Cir.1984). Only where a search intrudes upon a space as to which an individual has "a legitimate expectation of privacy" will the search violate that individual's Fourth Amendment rights. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The Fourth Circuit has identified three factors to assist courts in determining whether a defendant has a reasonable expectation of privacy in an area, the defendant's interest in and control of the areas searched, his subjective expectation of privacy, and society's willingness to recognize his expectation as reasonable. *United States v. Horowitz*, 806 F.2d 1222, 1225 (4th Cir.1986) (citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (citations omitted)). The burden is on the defendant to prove his reasonable expectation of privacy in the area searched. *Id.* at 1224 (citing *Rakas*, 439 U.S. at 130, 99 S.Ct. 421).

In *United States v. Wellons*, the Fourth Circuit held that an unauthorized driver of a rental car had no legitimate privacy interest in the car, and thus a police search of the car which discovered narcotics did not violate the driver's Fourth Amendment rights. 32 F.3d at 119–20. In *Wellons*, a rental car was pulled over for speeding and the driver informed the State trooper that the rental car was rented to another individual who was not in the car, and that

the rental agreement was not in the car. *Id.* at 118. The trooper· called the Hertz Corporation, who confirmed the that the individual the driver identified had rented the car, informed the trooper that the current driver was not authorized to drive it, and asked the trooper impound the car. *Id.* at 119. The driver declined to consent to a search. *Id.* However, a drug dog on the scene alerted on the car, and a warrantless search revealed the presence of narcotics. *Id.* The driver was then arrested. *Id.*

In holding that the unauthorized driver did not have standing to contest the search of the rental car, the *Wellons* court cited cases from the Fifth, Tenth, and First Circuits. *Id.* (citing *United States v. Boruff,* 909 F.2d 111, 117 (5th Cir.1990)) (driver of rental car had no legitimate expectation of privacy in rental car where driver was not listed as valid driver on rental agreement, even though he had permission of actual renter to drive the car, as agreement expressly forbade use of rental car for illegal purposes and use of car by an unauthorized driver, and driver was aware of both of those restrictions), cert. denied, 499 U.S. 975, 111 S.Ct. 1620, 113 L.Ed.2d 718 (1991); *United States v. Obregon,* 748 F.2d 1371, 1374–75 (10th Cir. 1984) (upholding lower court's determination that person not listed as valid driver on rental car agreement had no legitimate privacy interest in the car even though the person had renter's permission to drive car); cf. *United States v. Sanchez,* 943 F.2d 110, 112–14 (1st Cir.1991) (driver had no reasonable expectation of privacy in car borrowed with permission from boyfriend of owner absent evidence that driver normally used car or had strong relationship with car owner). The *Wellons* court also cited another Fourth Circuit case which had held that a defendant had no reasonable expectation of privacy in a stolen car, because the defendant had failed to show that the car, which had been reported stolen, was acquired innocently. *United States v. Hargrove,* 647 F.2d 411, 413 (4th Cir.1981).

The testimony of Casey, the Thrifty Rental Car Company station manager, established that Thrifty Rental Car Company of Virginia's policy is not to rent to individual's with false identification. Furthermore, Casey testified that if Thrifty had known that Jason Gordon was renting a car in Richard Williams' name using false identification, it would not have rented him the car. In his testimony, the Defendant admitted obtaining a false identification, a false driver's license, and a false debit card in Richard Williams' name, since his own driver's license had been suspended. He also admitted renting a car from Thrifty Rental Car Company of Virginia on February 23, 1999, utilizing the false driver's license and false debit card. Therefore, the Court **FINDS** that the Defendant was not an authorized driver of the Thrifty rental car rented in the name of Richard Williams when it was searched by the Norfolk Police on March 1, 1999, at Sentara Norfolk General Hospital. The Court further **FINDS** that in applying the three part test in *Horowitz:* (1) the Defendant never had a legitimate right to control the Thrifty rental car, (2) the Defendant had no reasonable subjective expectation of privacy, and (3) society would not recognize as reasonable an expectation of privacy in a vehicle obtained by fraud.

The Court **FINDS** that the Fourth Circuit's ruling in *Wellons* and *Horowitz* control this Motion. Therefore, the Court **FINDS** that the Defendant does not have standing to challenge the March 1, 1999 search of the Thrifty rental car in question. Accordingly, the Court **DENIES** the Defendant's Motion to˙ Suppress the physical evidence seized on March 1, 1999, from the Thrifty rental car parked at Sentara Norfolk General Hospital which had been fraudulently rented in the name of Richard Williams. Because the Defendant lacks standing the Court need not address the Government's alternative arguments in support of the validity of the warrantless search.

### III. *The Defendant's Statements*

 The Defendant's Motion to Suppress also asks the Court to suppress the statements the Defendant made to the Detectives after the Thrifty rental car was searched as the "fruit of the poisonous tree." The Defendant argues that the Detectives would not have questioned the Defendant in the manner that they did, and thus not elicited the responses that they did, if they had not searched the car. Because the Defendant alleges the search was unconstitutional, he contends that the Court should suppress any evidence derived therefrom as unconstitutional. Under the "fruit of the poisonous tree" doctrine, derivative evidence, such as physical evidence, a confession, or the testimony of a witness, must be suppressed as "fruit of the poisonous tree" if it was discovered by exploiting an illegal search. *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Based on the Court's finding that the Defendant did not have standing to challenge the search of the Thrifty Rental car and the denial of the Motion to Suppress, the Court **FINDS** that there was no illegal search. Therefore, the Court further **FINDS** that the Defendant's statements to the police were not the fruit of the poisonous tree. Accordingly, the Court **DENIES** the Defendant's Motion to Suppress the statements he made to the Detectives after they completed their search of the Thrifty rental car.

### IV. *Conclusion*

The Court **DENIES** the Defendant's Motion to Suppress the physical evidence seized on March 1, 1999, from the Thrifty rental car which was parked in the Sentara Norfolk General Hospital parking lot. The Court further **DENIES** the Defendant's Motion to Suppress the statements made to the Detectives after they completed their search of the rental car in question.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.