IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA14-1328

 Filed: 15 September 2015

Wake County, Nos. 12 CRS 227771, 13 CRS 3178

STATE OF NORTH CAROLINA

 v.

PAUL GREGORY PERRY

 Appeal by defendant from judgments entered 6 February 2014 by Judge Henry

W. Hight in Wake County Superior Court. Heard in the Court of Appeals 1 June

2015.

 Attorney General Roy Cooper, by Assistant Attorney General Elizabeth Jill
 Weese and Assistant Attorney General Derrick C. Mertz, for the State.

 W. Michael Spivey for defendant-appellant.

 Hatch, Little & Bunn, LLP, by Laura E. Beaver, Graebe Hanna & Sullivan,
 PLLC, by Mark R. Sigmon, and ACLU of North Carolina Legal Foundation, by
 Christopher A. Brook, for amici curiae American Civil Liberties Union of North
 Carolina Legal Foundation and American Civil Liberties Union.

 TYSON, Judge.

 Paul Gregory Perry (“Defendant”) appeals from judgment entered after a jury

convicted him of: (1) trafficking heroin by possession; (2) trafficking heroin by sale;

(3) maintaining a dwelling place for the sale of a controlled substance; (4) trafficking

heroin by transportation; and (5) conspiracy to traffic heroin by possession,
 STATE V. PERRY

 Opinion of the Court

transportation, and sale. We find no error in Defendant’s conviction or judgments

entered thereon.

 I. Factual Background

 A. State’s Evidence

 The State’s evidence tended to show that on 10 December 2012, Raleigh Police

Department detective M.K. Mitchell (“Detective Mitchell”) arrested Kenneth

Holderfield (“Holderfield”) for possession of marijuana. Holderfield provided

Detective Mitchell with the telephone number of his drug supplier, whom Holderfield

referred to as “Sincere.” Holderfield also called the number and placed the call on the

speaker while in the presence of Detective Mitchell. Detective Mitchell testified he

heard Sincere state “he was in Charlotte and would be coming to Raleigh tomorrow.”

Detective Mitchell also testified Holderfield asked Sincere if he would “front

[Holderfield] eight grams.” Sincere replied, “We’ll talk about it when I get to Raleigh

tomorrow.”

 The following day, Detective Mitchell submitted a sworn application for a

phone records production order to access records associated with the telephone

number provided by Holderfield, pursuant to 18 U.S.C. § 2703(d) and N.C. Gen. Stat.

§§ 15A-261, 15A-262, and 15A-263, to the Wake County Superior Court. The

application sought complete account and billing information, and complete call detail

records “with cell site information including latitude, longitude, sector azimuth and

 -2-
 STATE V. PERRY

 Opinion of the Court

orientation information for the target telephone number(s)” for the period from 13

November 2012 through 12 December 2012. Detective Mitchell’s application also

requested “precision location/GPS, E911 locate or Mobile Locate Service if applicable

from December 11, 2012 through December 12, 2012.”

 Detective Mitchell’s duly sworn statement stated:

 The Raleigh Police Department is conducting an
 investigation of a Drug Trafficking case that occurred in
 Raleigh. There is probable cause to believe that records for
 [Defendant’s telephone number] constitute evidence of a
 crime and/or the identity of a person participating in this
 crime, to wit:

 This cellular telephone number was obtained from a
 cooperating defendant who was arrested as a result of drug
 trafficking. The possessor of the phone . . . is being
 investigated as a major drug trafficker in the Raleigh area.
 This information has been corroborated by this Detective.
 It is believed that information received in the records
 requested in this court order will be crucial in the
 progression of this investigation.

 Superior Court Judge Lucy N. Inman signed the order and Detective Mitchell

submitted it to AT&T, the cellular phone service provider and holder of the account

associated with the phone number. AT&T provided the records of the location of the

cell phone tower “hits” or “pings” whenever a call was made to or from the cell phone.

AT&T sent emails of the longitude and latitude coordinates of these historical cell

tower “hits” to Detective Mitchell every fifteen minutes. Detective Mitchell testified

an approximately five- to seven-minute delay occurred between the time the phone

 -3-
 STATE V. PERRY

 Opinion of the Court

“pinged” a cell phone tower and the time AT&T received and calculated the location

and sent the latitude and longitude coordinates to him.

 After receiving the emails of the records from AT&T, Detective Mitchell

entered the coordinates into a Google Maps search engine to determine the physical

location of the last tower “pinged” from Defendant’s phone. Detective Mitchell

testified “the hits can range from . . . [a] five or seven meter hit to a couple hundred

meter hit,” which alerts law enforcement to the general area of the phone’s last

“pinged” location.

 On 11 December 2012, at approximately 4:00 p.m., Detective Mitchell received

a record of a “hit” from one of AT&T’s cell towers, which placed the phone within a

few meters of the Red Roof Inn, located on South Saunders Street, near Interstate 40

in Raleigh, North Carolina. Detective Mitchell and other law enforcement officers

from the Criminal Drug Enterprise Unit of the Raleigh Police Department began

conducting surveillance from unmarked vehicles stationed around the Red Roof Inn.

Detective Mitchell testified he received a record, which allowed him to further

“pinpoint” the phone’s location “down to a certain amount of rooms” in the hotel.

 Lieutenant Norris Quick (“Lieutenant Quick”) received confirmation from the

hotel’s front desk clerk that “someone had just checked into” one of the rooms located

within the block of rooms Detective Mitchell had identified. The front desk clerk gave

the officers the key to the room next to the room recently occupied.

 -4-
 STATE V. PERRY

 Opinion of the Court

 Lieutenant Quick and another officer conducted surveillance from the adjacent

room. Lieutenant Quick observed two men enter the adjoining hotel room and leave

after approximately five minutes. The officers inside the hotel room transmitted a

description of the men leaving the room to officers stationed outside of the hotel.

Detective Mitchell and Detective Bruce Richard Bizub (“Detective Bizub”) were inside

an unmarked patrol car and saw one of the men enter a Toyota Corolla and drive

away. The officers followed the vehicle and “started calling on the radio for marked

units in the area.”

 Eventually, a marked patrol vehicle initiated a traffic stop within two miles of

the Red Roof Inn. The driver of the Toyota Corolla was identified as Kenneth Wheeler

(“Wheeler”). The officers found ten bindles of heroin on Wheeler’s person. Wheeler

was arrested and told the officers he had obtained the heroin from the Red Roof Inn.

Detective Mitchell began preparing an application for a search warrant for

Defendant’s hotel room.

 Before Detective Mitchell could complete the search warrant, Lieutenant

Quick transmitted a request for backup at the hotel. Four individuals were leaving

the adjoining room in a hurry. Someone had apparently called the occupants to warn

them Wheeler had been stopped and arrested. The officers detained three males,

including Defendant, and one female in the hallway.

 -5-
 STATE V. PERRY

 Opinion of the Court

 The officers observed two black plastic grocery bags located on the floor near

the four individuals. The bags were open to allow the officers to see inside. The bags

contained brown boxes, rubber bands, and digital scales. Detective Mitchell testified,

based on his training and experience, he recognized the brown boxes as the type used

to contain plastic bags of heroin.

 While the four individuals were standing in the hallway, the female suspect,

Kiara Ledbetter (“Ledbetter”), voluntarily removed a large bag from inside her pants

and gave it to Lieutenant Quick. Lieutenant Quick testified Ledbetter told him, “Oh,

no, I’m not going down for this. This isn’t mine. It’s Paul’s.” The bag appeared to

contain heroin.

 Defendant, Ledbetter, and the two other individuals, Keyondre Owens

(“Owens”) and Paul Shell (“Shell”), were taken into custody, advised of their Miranda

rights, and searched by Detectives Mitchell and Bizub. Shell possessed ten bindles

of a substance believed to be heroin in the front pocket of his jeans. Defendant

possessed $1,620 in cash, but no heroin on his person. A forensic drug chemist with

the City-County Bureau of Identification subsequently confirmed the identity of the

substances as heroin, including the bindles found on Wheeler during the traffic stop.

 On 11 March 2013, a grand jury indicted Defendant for: (1) trafficking by

possession, 28 grams or more of heroin; (2) trafficking heroin by sale; and (3)

maintaining a dwelling used for keeping or selling controlled substances. On 8 July

 -6-
 STATE V. PERRY

 Opinion of the Court

2013, Defendant was also indicted for: (1) trafficking heroin by transportation; and

(2) conspiracy to traffic heroin by possession, transportation, and sale.

 B. Defendant’s Motion to Suppress

 On 13 November 2013, Defendant filed a pretrial motion to suppress the search

of telephone records and determination of the location of his cell phone, and any

evidence seized as a result of these searches. He argued law enforcement’s receipt of

the records of the coordinates of the towers his cell phone had “pinged” constituted

an unreasonable search without a warrant based upon probable cause in violation of

the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United

States, and under Article I, Section 20 of the Constitution of North Carolina.

Defendant also moved to suppress statements he made to officers on 11 and 12

December 2012, and to suppress evidence obtained as a result of an unconstitutional

search and seizure.

 The trial court heard Defendant’s motions prior to trial on 3 February 2014

and entered a written order denying Defendant’s motions to suppress on 20 February

2014. In its order, the trial court made the following findings of fact:

 11. That on December 11, 2012, M. K. Mitchell appeared
 before the Honorable Lucy N. Inman, Superior Court
 Judge, and presented to her an Application For Phone
 Records together with a proposed Order concerning
 [Defendant’s] cell phone number . . . .

 ....

 -7-
 STATE V. PERRY

 Opinion of the Court

 20. That Detective Mitchell was possessed of sufficient
 facts to conclude that violations of the North Carolina
 controlled substances laws were being committed and were
 about to be committed by the person possessing the cell
 phone . . . at the time he made the Application.

 21. That the Application contained a sufficient factual
 basis from which a neutral magistrate could conclude that
 the issuance of the Order was appropriate in order to assist
 in the investigation of violation of drug trafficking laws.

 22. That the contents of the Application contained the
 identity of the law enforcement officer making the
 application . . . and the identity of the Law Enforcement
 Agency conducting the investigation . . . .

 23. That the contents of the Application also contained
 a certification that the information sought in the Phone
 Records Production Order will assist with the investigation
 of this drug trafficking case.

 24. That the contents of the Application in the Order
 tendered to Judge Inman complies with [N.C. Gen. Stat.
 §§] 15A-262 and 263 and with 18 U.S.C. [§] 2703.

 C. Defendant’s Testimony at Trial

 Defendant’s case proceeded to trial before a jury on 3 February 2014.

Defendant testified he was a heroin user, and Ledbetter sold heroin. He stated he

had traveled to Raleigh with Shell and Owens to purchase heroin from Ledbetter.

Defendant stated he rented a room at the Red Roof Inn. He traveled to the train

station to pick up Ledbetter and drove her back to the Red Roof Inn. Shell and Owens

were inside the hotel room “bagging up” heroin. Defendant testified the heroin was

already in the hotel room when he arrived, but he helped Shell and Owens bag it.

 -8-
 STATE V. PERRY

 Opinion of the Court

Defendant also testified he did not sell heroin to anyone from the hotel room, and only

Shell and Ledbetter had brought heroin into the hotel room.

 The jury returned a verdict of guilty on all five charges. The trial court

sentenced Defendant to mandatory minimum sentences of 225 to 282 months

imprisonment for his three trafficking convictions, to run consecutively. The trial

court also sentenced Defendant to 14 to 26 months imprisonment for sale of heroin,

and 6 to 8 months imprisonment for intentionally maintaining a dwelling for keeping

or selling controlled substances, to run concurrently with the mandatory sentences.

 Defendant gave notice of appeal in open court.

 II. Issues

 Defendant argues the trial court erred by: (1) denying his motion to suppress

evidence obtained by using “real-time tracking” of his cell phone without a warrant;

and (2) reviewing and sealing relevant documents without disclosure to Defendant.

 III. Fourth Amendment Analysis

 Defendant argues the trial court erred by denying his motion to suppress any

evidence obtained as a result of an unlawful search of his cell phone records and

location of his phone. He contends his Fourth and Fourteenth Amendment rights

under the Constitution of the United States, and under N.C. Const. art I, § 20, the

analogous provision of the Constitution of North Carolina, were violated because law

 -9-
 STATE V. PERRY

 Opinion of the Court

enforcement obtained this information without a search warrant based on probable

cause.

 A. Standard of Review

 Appellate review of a suppression order “is strictly limited to determining

whether the trial judge’s underlying findings of fact are supported by competent

evidence, in which event they are conclusively binding on appeal, and whether those

factual findings in turn support the judge’s ultimate conclusions of law.” State v.

Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). Whether

the findings of fact support the conclusions of law is reviewed de novo. State v.

Baublitz, 172 N.C. App. 801, 806, 616 S.E.2d 615, 619 (2005). “Under a de novo

review, the court considers the matter anew and freely substitutes its own judgment

for that of the lower tribunal.” State v. Williams, 362 N.C. 628, 632-33, 669 S.E.2d

290, 294 (2008) (citations and internal quotation marks omitted).

 B. The Stored Communications Act

 Third-party records pertaining to Defendant’s cell phone were obtained from

AT&T, pursuant to a judicial order issued under the Stored Communications Act

(“the SCA”), as codified in 18 U.S.C. § 2703 (2013), and N.C. Gen. Stat. §§ 15A-261,

15A-262, and 15A-263. The SCA authorizes a governmental entity to “require a

provider of electronic communication service or remote computing service to disclose

a record or other information pertaining to a subscriber to or customer of such

 - 10 -
 STATE V. PERRY

 Opinion of the Court

service[.]” 18 U.S.C. § 2703(c)(1) (2013). The SCA requires the governmental entity

to obtain one of the following prior to disclosure: (1) a warrant; (2) a court order; or

(3) the consent of the subscriber or customer. 18 U.S.C. § 2703(c)(1)(A)-(C). 18 U.S.C.

§ 2703(c)(1) specifically excludes the contents of communications from being

disclosed. Id.

 A court order compelling disclosure pursuant to 18 U.S.C. § 2703(d) “shall issue

only if the governmental entity offers specific and articulable facts showing that there

are reasonable grounds to believe that the contents of a wire or electronic

communication, or the records or other information sought, are relevant and material

to an ongoing criminal investigation.” 18 U.S.C. § 2703(d) (emphasis supplied).

 C. Historical Versus “Real-time” Information

 Defendant asserts the AT&T records obtained via his cell phone constituted

“real-time” information, and argues a search warrant supported by probable cause

was required. We disagree. Courts in other jurisdictions, which have considered

disclosure of records under the SCA, have concluded the federal statute permits the

disclosure of “historical,” as opposed to “real-time,” information.

 The majority of federal courts which have considered the issue have concluded

that “real-time” location information may only be obtained pursuant to a warrant

supported by probable cause. See United States v. Espudo, 954 F. Supp. 2d 1029,

1034-35 (S.D. Cal. 2013). The distinguishing characteristic separating historical

 - 11 -
 STATE V. PERRY

 Opinion of the Court

records from “real-time” information is the former shows where the cell phone has

been located at some point in the past, whereas the latter shows where the phone is

presently located through the use of GPS or precision location data. See In re

Application of U.S. for Historical Cell Site Data, 724 F.3d 600, 615 (5th Cir. 2013)

(holding the receipt of cell site location information under the SCA does not

categorically violate the Fourth Amendment as to historical information, but

expressly limiting this holding to historical information only); In re Application of

U.S. for an Order Directing a Provider of Elec. Commc’n Serv. to Disclose Records to

Gov’t, 620 F.3d 304, 307-08 (3rd Cir. 2010) (“[T]here is no dispute that historical [cell

site location information] is a ‘record or other information pertaining to a subscriber

. . . or customer[.]’”).

 Several courts have held the SCA permits a government entity to obtain cell

tower site location information from a third-party service provider in situations

where the cell tower site location information sought pre-dates the court order and

where the cell tower site location information is collected after the date the court

order issues. Although the former may technically be considered “historical” while

the latter is “prospective” in relation to the date of the court order, both are considered

“records” under the SCA. The government entity only receives this information after

it has been collected and stored by the third-party service provider. See United States

v. Booker, No. 1:11-CR-255-1-TWT, 2013 WL 2903562, at *6 (N.D.Ga. June 13, 2013)

 - 12 -
 STATE V. PERRY

 Opinion of the Court

(holding “[t]he SCA makes no distinction between historical and prospective cell site

location information”); In re Application of the U.S. for an Order for Disclosure of

Telecomms. Records & Authorizing the Use of a Pen Register and Trap and Trace, 405

F. Supp. 2d 435, 444 (S.D.N.Y. 2005) (holding prospective cell site data is

“information” under the SCA “inasmuch as cell site information is transmitted to the

Government only after it has been in the possession of the cell phone company” and

noting nothing in the SCA limits when “information may come into being” leaving it

“susceptible to an interpretation that the ‘information’ sought might come into being

in the future”); In re Application of the U.S. for an Order Authorizing the Use of Two

Pen Register and Trap and Trace Devices, 632 F. Supp. 2d 202, 207 n.8 (E.D.N.Y.

2008) (“The prospective cell-site information sought by the Government . . . becomes

a[n] ‘historical record’ as soon as it is recorded by the [third-party] provider.”).

 Defendant cites two cases in his brief from the state courts of New Jersey and

Florida, which held an individual’s reasonable expectation of privacy is implicated by

“real-time” cell phone tracking, and a warrant is required. See Tracey v. Florida, 152

So. 3d 504 (2014) (holding police officers’ use of “real-time” cell tower site location

information to track defendant was a search falling under the purview of the Fourth

Amendment); State v. Earls, 70 A.3d 630 (2013) (holding a warrant is required for the

use of “real-time” cell tower site location information because Article I, Paragraph 7

 - 13 -
 STATE V. PERRY

 Opinion of the Court

of the New Jersey Constitution provides greater protection against unreasonable

searches and seizures than the Fourth Amendment).

 After careful review of the record and trial transcripts, we conclude the cell

tower site location information acquired and stored by AT&T and provided to the

officers were historical records. The cases Defendant relies on are inapplicable to the

facts before us. North Carolina appellate courts have held Article I, Section 20 of the

Constitution of North Carolina provides the same protections against unreasonable

search and seizure as the Fourth Amendment to the Constitution of the United

States. See State v. Arrington, 311 N.C. 633, 643, 319 S.E.2d 254, 260 (1984) (citation

omitted).

 Detective Mitchell testified the emails he received of records from AT&T

consisted of latitudinal and longitudinal coordinates of the cell towers Defendant’s

cell phone “pinged” when connected. He further testified “[t]hey’re historical hits;

they’re not active [or] right on time” and there is “probably a five- or seven-minute

delay.” Other evidence shows AT&T emailed the delayed recorded information to

Detective Mitchell every fifteen minutes.

 Detective Mitchell and the other officers followed Defendant’s historical travel

by entering the coordinates of cell tower “pings” provided by AT&T into a Google

Maps search engine to determine the physical location of the last tower “pinged.”

Defendant’s cell phone was never contacted, “pinged,” or its precise location directly

 - 14 -
 STATE V. PERRY

 Opinion of the Court

tracked by the officers. The officers did not interact with Defendant’s cell phone, nor

was any of the information received either directly from the cell phone or in “real

time.” All evidence shows the cell tower site location information provided by AT&T

was historical stored third-party records and properly disclosed under the court’s

order as expressly provided in the SCA. 18 U.S.C. § 2703(d). This argument is

overruled.

 D. Reasonable Expectation of Privacy

 Since the location information acquired from Defendant’s cell phone was

“historical,” rather than “real-time,” we address whether the retrieval of this

information constituted a search under the Fourth Amendment, and required a

warrant. Whether the retrieval of cell tower site location information, triggered by

Defendant’s use of his cell phone, constituted a “search” hinges on whether Defendant

can show either a trespass or a reasonable expectation of privacy in the information

his cell phone transmitted to AT&T. The Supreme Court of the United States has

not decided whether historical cell tower site location information raises Fourth

Amendment issues. Similarly, this issue appears to be a case of first impression for

North Carolina appellate courts.

 The Fourth Amendment to the Constitution of the United States, as made

applicable to the sovereign states through the Fourteenth Amendment, provides:

 The right of the people to be secure in their persons, houses,
 papers, and effects, against unreasonable searches and

 - 15 -
 STATE V. PERRY

 Opinion of the Court

 seizures shall not be violated, and no Warrants shall issue,
 but upon probable cause, supported by Oath or affirmation,
 and particularly describing the place to be searched, and the
 persons or things to be seized.

U.S. Const. amend. IV.

 Subject to “a few specifically established and well-delineated exceptions,” the

Fourth Amendment protects privacy interests by prohibiting officers from conducting

a search without a valid warrant based on probable cause. Coolidge v. New

Hampshire, 403 U.S. 443, 455, 29 L. Ed. 2d 564, 576 (1971); see also State v. Allison,

298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979).

 The analogous provision in the Constitution of North Carolina, Article I, the

Declaration of Rights, Section 20, provides “[g]eneral warrants, whereby any officer

or other person may be commanded to search suspected places without evidence of

the act committed, or to seize any person or persons not named, whose offense is not

particularly described and supported by evidence, are dangerous to liberty and shall

not be granted.” N.C. Const. art. I, § 20. Our Supreme Court has held Article I,

Section 20 provides the people the same protection against unreasonable searches

and seizures as the Fourth Amendment of the Constitution of the United States.

Arrington, 311 N.C. at 643, 319 S.E.2d at 260 (holding Article I, Section 20 of the

Constitution of North Carolina provides the same protections against unreasonable

searches and seizures as the Fourth Amendment); State v. Garner, 331 N.C. 491, 506,

417 S.E.2d 502, 510 (1992) (citations omitted) (holding “there is nothing to indicate

 - 16 -
 STATE V. PERRY

 Opinion of the Court

anywhere in the text of Article I, Section 20 any enlargement or expansion of rights

beyond those afforded in the Fourth Amendment as applied to the states by the

Fourteenth Amendment”).

 Defendant argues his Fourth Amendment rights were violated when law

enforcement obtained historical cell tower site location information transmitted from

his cell phone, without a warrant and without probable cause, in order to locate him.

We disagree.

 A “search” occurs under the Fourth Amendment in one of two circumstances.

Under the common law “trespass theory,” a search occurs upon a physical intrusion

by government agents into a constitutionally protected area in order to obtain

information. United States v. Jones, __ U.S. __, __, 181 L. Ed. 2d 911, 918 (2012).

Without a physical trespass and under the more commonly employed “reasonable

expectation of privacy theory,” a search occurs when the government invades

reasonable expectations of privacy to obtain information. Katz v. United States, 389

U.S. 347, 351, 19 L. Ed. 2d 576, 582 (1967) (holding “the Fourth Amendment protects

people, not places” and finding an unconstitutional search in the attachment of an

eavesdropping device to a public telephone booth without a warrant).

 Under Katz and subsequent cases, the test for whether an unreasonable search

occurred depends on whether: (1) “the individual manifested a subjective expectation

of privacy in the object of the challenged search[;]” and, (2) “society is willing to

 - 17 -
 STATE V. PERRY

 Opinion of the Court

recognize that expectation as reasonable.” Kyllo v. United States, 533 U.S. 27, 33, 150

L. Ed. 2d 94, 101 (2001) (citation and internal quotation marks omitted).

 The State argues Defendant cannot assert any reasonable expectation of

privacy in the non-content information his phone transmitted to, and which became

a record stored by, AT&T, a third party. The State contends no “search” occurred,

and neither the Fourth Amendment nor the analogous provision in the Constitution

of North Carolina are implicated by these facts. The State relies on several Supreme

Court of the United States cases, which held a defendant lacked a reasonable

expectation of privacy in information he provided to a third party, which the third

party later provided to a government entity.

 In United States v. Miller, the Supreme Court of the United States held the

defendant had no reasonable expectation of privacy in his bank records, maintained

by the bank and procured by governmental subpoena. 425 U.S. 435, 442-43, 48 L. Ed.

2d 71, 79 (1976). The Court stated:

 [T]he Fourth Amendment does not prohibit the obtaining of
 information revealed to a third party and conveyed by him to
 Government authorities, even if the information is revealed
 on the assumption that it will be used only for a limited
 purpose and the confidence placed in the third party will not
 be betrayed.

Id. at 443, 48 L. Ed. 2d at 79 (citations omitted).

 In Smith v. Maryland, the Supreme Court of the United States considered

whether the defendant had a reasonable expectation of privacy in the telephone

 - 18 -
 STATE V. PERRY

 Opinion of the Court

numbers he dialed on his home telephone. 442 U.S. 735, 737, 61 L. Ed. 2d 220, 225

(1979). At the government’s request, the telephone company installed a pen register

to obtain the defendant’s call history.

 Applying the reasoning set forth in Miller, the Court held the acquisition of

this information by the government did not constitute a search, because the

defendant had no “legitimate expectation of privacy” in the numbers he dialed on his

phone. Id. at 742, 61 L. Ed. 2d at 227. The Court explained “even if [the defendant]

did harbor some subjective expectation that the phone numbers he dialed would

remain private, this expectation is not one that society is prepared to recognize as

reasonable,” and explicitly held “a person has no legitimate expectation of privacy in

information he voluntarily turns over to third parties.” Id. at 743-44, 61 L. Ed. 2d at

229 (emphasis supplied) (citations and internal quotation marks omitted).

 This Court has expressly recognized the third-party doctrine discussed in

Miller and Smith as an exemption from the requirement of a warrant based upon

probable cause. See State v. Suggs, 117 N.C. App. 654, 659-60, 453 S.E.2d 211, 214-

215 (1995) (holding “the defendant’s constitutional protection against unreasonable

search and seizure is not implicated” where telephone records were obtained from

third-party telephone company); State v. Melvin, 86 N.C. App. 291, 295-96, 357 S.E.2d

379, 382-83 (1987) (holding SBI obtaining defendant’s bank records from the bank

“could not constitute a governmental ‘search’ for Fourth Amendment purposes”

 - 19 -
 STATE V. PERRY

 Opinion of the Court

because defendant had no Fourth Amendment privacy interest in records maintained

by third party); State v. Overton, 60 N.C. App. 1, 31, 298 S.E.2d 695, 713 (1982)

(holding Miller was controlling and defendant’s Fourth Amendment rights were not

violated when the government obtained information from his bank account, credit

union account, and telephone records maintained by third party).

 In a case decided after Miller and Smith, but prior to the present technological

state of cellular communications, the Supreme Court of the United States addressed

electronic tracking of individuals. In United States v. Knotts, government agents

located an illegal drug lab by installing an electronic “beeper” into a container of

chemicals. 460 U.S. 276, 75 L. Ed. 2d 55 (1983). The battery-operated radio

transmitter emitted a signal that could be retrieved and tracked with a radio receiver.

The beeper was installed with the consent of the owner of the container prior to its

sale to the defendant. Law enforcement received the signals from the beeper to track

the defendant to his cabin. The Court held neither a search nor a seizure had

occurred, because tracking the vehicle carrying the container on public roads and into

an open field did not invade any reasonable expectation of privacy. Id. at 285, 75 L.

Ed. 2d at 64.

 The Supreme Court of the United States has not ruled on whether citizens

have a reasonable expectation of privacy in the disclosure of their approximate and

historical locations by cell tower site location data under the Fourth Amendment.

 - 20 -
 STATE V. PERRY

 Opinion of the Court

However, the Court has recognized serious privacy interests are involved in locating,

monitoring, and tracking individuals through the use of technological advances. In

United States v. Jones, the Supreme Court held the physical attachment of a GPS

tracking device to the defendant’s vehicle is a trespass and constitutes a search under

the Fourth Amendment. __ U.S. __, 181 L. Ed. 2d 911 (2012).

 The majority’s opinion in Jones relied upon a trespass-based rationale and held

“the Government’s installation of a GPS device on a target’s vehicle, and its use of

that device to monitor the vehicle’s movements, constitutes a ‘search.’” Id. at __, 181

L. Ed. 2d at 918. Justice Sotomayor’s concurring opinion in Jones reaffirmed the

Court’s continued adherence to Katz, stating “even in the absence of a trespass, a

Fourth Amendment search occurs when the government violates a subjective

expectation of privacy that society recognizes as reasonable.” Id. at __, 181 L. Ed. 2d

at 924 (Sotomayor, J., concurring) (citations and internal quotation marks omitted).

 Justice Sotomayor’s opinion also warns of inevitable changes in society’s

reasonable expectations of privacy as technology advances. Id. at __, 181 L. Ed. 2d.

at 925 (“[T]he same technological advances that have made possible nontrespassory

surveillance techniques will also affect the Katz test by shaping the evolution of

societal privacy expectations.”).

 In his separate concurring opinion, Justice Alito noted:

 [T]he Katz test rests on the assumption that this
 hypothetical reasonable person has a well-developed and

 - 21 -
 STATE V. PERRY

 Opinion of the Court

 stable set of privacy expectations. But technology can
 change those expectations. Dramatic technological change
 may lead to periods in which popular expectations are in
 flux and may ultimately produce significant changes in
 popular attitudes. New technology may provide increased
 convenience or security at the expense of privacy, and
 many people may find the tradeoff worthwhile. And even
 if the public does not welcome the diminution of privacy
 that new technology entails, they may eventually reconcile
 themselves to this development as inevitable.

Id. at __, 181 L. Ed. 2d at 932 (Alito, J, concurring).

 Justice Alito’s opinion also made keen observations about technological

advances, which hold particular relevance at bar. He referred to the emergence of

new devices, which permit greater monitoring of an individual’s movements in recent

years, and stated:

 Perhaps most significant, cell phones and other wireless
 devices now permit wireless carriers to track and record
 the location of users . . . . For older phones, the accuracy of
 the location information depends on the density of the
 tower network, but new “smart phones,” which are
 equipped with a GPS device, permit more precise tracking.
 For example, when a user activates the GPS on such a
 phone, a provider is able to monitor the phone’s location
 and speed of movement . . . . Similarly, phone-location-
 tracking services are offered as “social” tools, allowing
 consumers to find (or to avoid) others who enroll in these
 services. The availability and use of these and other new
 devices will continue to shape the average person’s
 expectations about the privacy of his or her daily
 movements.

Id. at __, 181 L. Ed. 2d at 933.

 - 22 -
 STATE V. PERRY

 Opinion of the Court

 The facts in the case before this Court are distinguishable from the facts and

ultimate holding in Jones. Unlike in Jones, no physical trespass onto Defendant’s

person or property occurred. Defendant has not shown any evidence of any GPS or

“real-time” tracking. The officers only received the coordinates of historical cell tower

“pings” after they had been recorded and stored by AT&T, a third party.

 Additionally, the physical trespass in Jones was not authorized by a warrant

or court order of any kind. Most importantly, Jones did not rely upon the long-

standing principle repeatedly affirmed by the Supreme Court of the United States,

the federal courts, and this Court that “the Fourth Amendment does not prohibit the

obtaining of information revealed to a third party and conveyed by him to

Government authorities.” Miller, 425 U.S. at 443, 48 L. Ed. 2d at 79. See also

Ostergren v. Cuccinelli, 615 F.3d 263, 282 (4th Cir. 2010); Doe v. Broderick, 225 F.3d

440, 449 (4th Cir. 2000); United States v. Horowitz, 806 F.2d 1222, 1226 (4th Cir.

1986).

 E. Recent Cases from the U.S. Court of Appeals for the Third, Fifth, and Eleventh

 Circuits

 In examining whether Defendant showed a reasonable expectation of privacy

in the cell tower site location information stored and transmitted by AT&T, we find

several recent decisions from the United States Court of Appeals for the Third, Fifth,

and Eleventh Circuits persuasive and instructive.

 - 23 -
 STATE V. PERRY

 Opinion of the Court

 In In re Application of the United States for an Order Directing a Provider of

Electronic Communication Service to Disclose Records to the Government (“In re

Application (Third Circuit)”), the Third Circuit held “[cell site location information]

from cell phone calls is obtainable under a § 2703(d) order,” which “does not require

the traditional probable cause determination” necessary for a warrant. 620 F.3d at

313.

 In In re Application of the United States for Historical Cell Site Data (“In re

Application (Fifth Circuit)”), the Fifth Circuit held a court order issued under 18

U.S.C. § 2703(d) compelling production of a cellular provider’s business records

showing historical cell tower site location information did not implicate the Fourth

Amendment, and no search warrant was required. 724 F.3d at 614-15.

 The Fifth Circuit’s decision emphasized the cellular company, not the

government, was responsible for the initial collection and storage of the cell tower

information. Id. at 609-10. The Fifth Circuit’s decision stated:

 The Government does not require service providers to
 record this information or store it. The providers control
 what they record and how long these records are retained.
 . . . In the case of such historical cell site information, the
 Government merely comes in after the fact and asks a
 provider to turn over records the provider has already
 created.

Id. at 612.

 - 24 -
 STATE V. PERRY

 Opinion of the Court

 Their decision also noted these business records do not contain any content of

the user’s communications and concluded no reasonable privacy was expected in

these records because

 [a] cell service subscriber, like a telephone user,
 understands that his cell phone must send a signal to a
 nearby cell tower in order to wirelessly connect his call. . .
 . [and] cell service providers’ and subscribers’ contractual
 terms of service and providers’ privacy policies expressly
 state that a provider uses a subscriber’s location
 information to route his cell phone calls. In addition, these
 documents inform subscribers that the providers not only
 use the information, but collect it.

Id. at 613.

 The Fifth Circuit’s decision also analogized the lack of a reasonable expectation

of privacy in this case to that in Smith v. Maryland, supra, and stated: “Cell phone

users, therefore, understand that their service providers record their location

information when they use their phones at least to the same extent that the landline

users in Smith understood that the phone company recorded the numbers they

dialed.” Id.

 This decision also agreed with some of the concerns expressed by the

concurring Supreme Court Justices in Jones “that technological changes can alter

societal expectations of privacy.” Id. at 614. See Jones, __ U.S. at __, 181 L. Ed. 2d at

932. However, the Fifth Circuit stated, “[a]t the same time, law enforcement tactics

must be allowed to advance with technological changes, in order to prevent criminals

 - 25 -
 STATE V. PERRY

 Opinion of the Court

from circumventing the justice system.” Id. at 614 (citation and internal quotation

marks omitted).

 The United States Court of Appeals for the Eleventh Circuit, en banc, followed

the Fifth Circuit’s reasoning and held the defendant did not hold a reasonable

expectation of privacy in third-party cell tower records created by the telephone

company and turned over to the government. United States v. Davis, 785 F.3d 498,

511 (11th Cir. 2015) (en banc). See also United States v. Skinner, 690 F.3d 772, 778

(6th Cir. 2012) (holding “[t]here is no inherent constitutional difference between

trailing a defendant and tracking him via [cell site location information] technology”).

 The Eleventh Circuit’s en banc decision reiterated long-standing Fourth

Amendment principles.

 [L]ike the bank customer in Miller and the phone customer
 in Smith, [the defendant] can assert neither ownership nor
 possession of the third-party’s business records he sought
 to suppress. . . .

 More importantly, like the bank customer in Miller and the
 phone customer in Smith, [the defendant] has no subjective
 or objective reasonable expectation of privacy in
 MetroPCS’s business records showing the cell tower
 locations that wirelessly connected his calls at or near the
 time of six of the seven robberies.

Davis, 785 F.3d at 511.

 The facts at bar are consistent with the holdings in In re Application (Third

Circuit), In re Application (Fifth Circuit), and Davis. The officers investigating

 - 26 -
 STATE V. PERRY

 Opinion of the Court

Defendant received historical cell tower site location information, stored as a business

record by AT&T, a third party, pursuant to a court order. Defendant voluntarily

conveyed this information to AT&T, his service provider.

 Law enforcement did not use GPS, “real-time” information, or “ping,” track,

trace, or otherwise contact Defendant’s cell phone. No physical trespass occurred on

any of Defendant’s person or property, nor was the content of any of Defendant’s

communication disclosed. Officer Mitchell testified there was a five- to seven-minute

delay in the cell tower site information he received from AT&T. Defendant failed to

show any reasonable expectation of privacy in these third-party stored records. The

acquisition of this information did not constitute a “search” under the Fourth

Amendment to the Constitution of the United States or Article I, Section 20 of the

Constitution of North Carolina. Defendant’s argument is overruled.

 F. United States v. Graham

 Defendant has filed a Memorandum of Additional Authority citing the United

States Court of Appeals for the Fourth Circuit’s recent opinion, United States v.

Graham. After careful review, we find it clearly distinguishable from the facts at bar.

The Fourth Circuit held “the government conducts a search under the Fourth

Amendment when it obtains and inspects a cell phone user’s historical [cell site

location information] for an extended period of time.” Graham, Nos. 12-4659, 12-4825,

2015 WL 4637931, at *8 (4th Cir. Aug. 5, 2015) (emphasis supplied).

 - 27 -
 STATE V. PERRY

 Opinion of the Court

 In Graham, the government sought cell tower site location information for

multiple defendants for a period of 221 days. To the contrary, the officers at bar

sought cell tower site location information for only portions of two days, and after

Detective Mitchell overheard Defendant tell Holderfield he would be traveling from

Charlotte to Raleigh the following day. It cannot reasonably be argued that portions

of two days constitutes an “extended period of time,” to implicate the Fourth

Amendment or Article I, Section 20 of the Constitution of North Carolina. Id. See

Jones __ U.S. at __, 181 L. Ed. 2d at 934 (Alito, J., concurring) (citation omitted)

(“[R]elatively short-term monitoring of a person’s movements on public streets

accords with expectations of privacy that our society has recognized as reasonable.”);

Skinner, 690 F.3d at 780 (holding DEA agents tracking defendant’s cell phone for

three days did not rise to “a level of comprehensive tracking that would violate the

Fourth Amendment”).

 The Fourth Circuit’s majority opinion purported to distinguish the long-

standing tenet of the third-party doctrine that an individual cannot claim a legitimate

expectation of privacy in information he has voluntarily turned over to a third party.

Smith, 442 U.S. at 743-44, 61 L. Ed. 2d at 229. The Fourth Circuit’s majority opinion

relied on the notion that the defendants did not “voluntarily disclose” their cell tower

site location information to their service providers, and found the third-party doctrine

to be inapplicable. This supposition directly contradicts the conclusions reached by

 - 28 -
 STATE V. PERRY

 Opinion of the Court

all other federal appellate courts, who have considered this question. See Davis, 785

F.3d at 511 (holding defendant had no “objective reasonable expectation of privacy in

. . . business records showing the cell tower locations that wirelessly connected his

calls”); Skinner, 690 F.3d at 777 (holding defendant “did not have a reasonable

expectation of privacy in the data given off by his voluntarily procured pay-as-you-go

cell phone”); In re Application (Fifth Circuit), 724 F.3d at 615 (holding the government

can use “[s]ection 2703(d) orders to obtain . . . cell site information” without

implicating the Fourth Amendment); In Re Application (Third Circuit), 620 F.3d at

313 (holding that cell tower site location information “is obtainable under a § 2703(d)

order and that such an order does not require the traditional probable cause

determination”).

 Judge Motz’s dissenting opinion in Graham notes the majority’s holding that

“cell phone users do not voluntarily convey [cell site location information]

misapprehends the nature of [cell site location information], attempts to redefine the

third-party doctrine, and rests on a long-rejected factual argument and the

constitutional protection afforded a communication’s content.” Graham, at *41 (Motz,

J., dissenting) (emphasis supplied).

 As most cell phone users know all too well, however,
 proximity to a cell tower is necessary to [place outgoing
 calls, send text messages, and route incoming calls and
 messages.] Anyone who has stepped outside to “get a
 signal,” or has warned a caller of a potential loss of service

 - 29 -
 STATE V. PERRY

 Opinion of the Court

 before entering an elevator, understands on some level,
 that location matters.

 A cell phone user thus voluntarily enters an
 arrangement with his service provider in which he knows
 that he must maintain proximity to the provider’s cell
 towers in order for his phone to function. Whenever he
 expects his phone to work, he is thus permitting—indeed,
 requesting—his service provider to establish a connection
 between his phone and a nearby cell tower. A cell phone
 user therefore voluntarily conveys the information
 necessary for his service provider to identify the [cell site
 location information] for his calls and texts.

Id. at *41-*42 (citation omitted).

 G. Good-Faith Exception

 Even if we were to accept Defendant’s arguments and find a search warrant

based upon probable cause was required under these facts, we hold the good-faith

exception to the Fourth Amendment warrant requirement applies, as all three judges

on the Fourth Circuit concluded in Graham.

 The exclusionary rule “generally prohibits the introduction at criminal trial of

evidence obtained in violation of a defendant’s Fourth Amendment rights[.]” United

States v. Stephens, 764 F.3d 327, 335 (4th Cir. 2014) (citation and quotation marks

omitted). However, the Supreme Court of the United States recognizes a good-faith

exception to the exclusionary rule where law enforcement acts “with an objectively

reasonable good-faith belief that their conduct is lawful[.]” Davis v. United States, __

U.S. __, __, 180 L. Ed. 2d 285, 295 (2011) (citation and internal quotation marks

 - 30 -
 STATE V. PERRY

 Opinion of the Court

omitted). The Court has held the good-faith exception applies where law enforcement

relies on a search warrant or other court order issued by a neutral magistrate. United

States v. Leon, 468 U.S. 897, 922-23, 26, 82 L. Ed. 2d 677, 698-99 (1984).

 The majority opinion in Graham held:

 [T]he government is entitled to the good-faith exception
 because, in seeking Appellants’ [cell tower site location
 information], the government relied on the procedures
 established in the SCA and on two court orders issued by
 magistrate judges in accordance with the SCA. . . .
 Appellants do not claim that the government was dishonest
 or reckless in preparing either application. Upon
 consideration of each of the government’s applications, two
 magistrate judges of the district court respectively issued §
 2703(d) orders to Sprint/Nextel for the disclosure of
 Appellants’ account records. There is nothing in the record
 to suggest that either magistrate abandoned her or his
 detached and neutral role such that a well trained [sic]
 officer’s reliance on either order would have been
 unreasonable.

Id. at *21 (citations and internal quotation marks omitted).

 The circumstances surrounding the issuance of the court order at bar are

nearly identical to those in Graham. Detective Mitchell relied on the procedures

established in the SCA when he submitted his sworn application for a phone records

production order pursuant to 18 U.S.C. § 2703(d) (2013). Defendant does not argue

Detective Mitchell was “dishonest or reckless” in preparing his application. Graham,

at *21. There is also nothing in the record to suggest Judge Inman “abandoned her .

 - 31 -
 STATE V. PERRY

 Opinion of the Court

. . detached and neutral role such that a well trained [sic] officer’s reliance on either

order would have been unreasonable.” Id.

 The law enforcement officers reasonably relied on the SCA in exercising their

option to seek a § 2703(d) order and obtain Defendant’s historical stored cell tower

site location records from third-party AT&T. The good-faith exception applies to

Defendant’s Fourth Amendment claims.

 IV. Disclosure of Sealed Documents

 Defendant also argues the State provided documents to the trial court in

camera during his trial. Defendant requests this Court to review the documents and

determine whether they are material to his guilt, sentencing, or arguments raised on

appeal.

 A. Standard of Review

 The proper standard of review for reviewing sealed documents from the trial

court is de novo. State v. Scott, 180 N.C. App. 462, 463-64, 637 S.E.2d 292, 293 (2006)

(citations omitted), disc. review denied, 361 N.C. 367, 644 S.E.2d 560 (2007). “Under

a de novo review, the court considers the matter anew and freely substitutes its own

judgment for that of the lower tribunal.” State v. Williams, 362 N.C. 628, 632-33, 669

S.E.2d 290, 294 (2008) (citations and internal quotation marks omitted).

 B. Analysis

 - 32 -
 STATE V. PERRY

 Opinion of the Court

 The trial court sealed the documents for appellate review. The documents were

not disclosed to Defendant or his counsel. Pursuant to defense counsel’s request, the

Wake County Clerk of Superior Court provided the sealed documents to this Court

for review. If the trial court conducts an in camera inspection of documents, but

denies the defendant’s request for the documents, they should be sealed and “placed

in the record for appellate review.” State v. Hardy, 293 N.C. 105, 128, 235 S.E.2d 828,

842 (1977).

 On appeal, this Court is required to examine the documents to determine if

they contain information that is “both favorable to the accused and material to [either

his] guilt or punishment.” Pennsylvania v. Ritchie, 480 U.S. 39, 57, 94 L. Ed. 2d 40,

57 (1987) (citations omitted). Defendant is constitutionally entitled to disclosure of

this evidence, only if the sealed records contain evidence which is both “favorable”

and “material.” Id. at 59, 94 L. Ed. 2d. at 58-59.

 We have carefully examined the sealed documents, and conclude they do not

contain any information favorable and material to Defendant’s guilt or punishment.

See State v. McGill, 141 N.C. App. 98, 102-03, 539 S.E.2d 351, 355-56 (2000) (noting

favorable evidence “includes evidence which tends to exculpate the accused as well

as any evidence adversely affecting the credibility of the government’s witnesses” and

evidence is material “only if there is a reasonable probability that, had the evidence

been disclosed to the defense, the result of the proceeding would have been different”).

 - 33 -
 STATE V. PERRY

 Opinion of the Court

 V. Conclusion

 The trial court properly denied Defendant’s motion to suppress the cell tower

site location information obtained by law enforcement. These stored historical

records were provided by AT&T, a third party, pursuant to a valid court order.

Defendant had no reasonable expectation of privacy in these third-party records.

Smith, 442 U.S. at 737, 61 L. Ed. 2d at 225. The procurement of this information was

not a “search,” and did not require the issuance of a warrant based upon probable

cause. Neither the Fourth Amendment of the Constitution of the United States nor

Article I, Section 20 of the Constitution of North Carolina was implicated.

 We have reviewed the documents sealed by the trial court. Our review shows

they contain no favorable or material information to Defendant’s guilt or punishment.

 Defendant received a fair trial, free from prejudicial errors he preserved and

argued. We find no error in Defendant’s conviction by the jury or in the trial court’s

judgment entered thereon.

 NO ERROR.

 Judge DIETZ concurs.

 Chief Judge McGEE concurs in a separate opinion.

 - 34 -
 No. COA14-1328 – State v. Perry

 McGEE, Chief Judge, concurring.

 I concur in the final disposition of the majority’s opinion finding no error in the

trial court’s denial of Defendant’s motion to suppress the evidence obtained by State

law enforcement officers from AT&T pursuant to a judicial order issued under the

Stored Communications Act (“the SCA”) in accordance with 18 U.S.C. § 2703(d).

However, I respectfully disagree with the majority’s characterization of the

information obtained pursuant to that judicial order — which order was entered and

executed on 11 December 2012 for information generated and transmitted on the

same day from AT&T to law enforcement officers after only a “five- to seven-minute

delay” — as “historical” information, rather than “real-time” information.

 As described by the majority, on 11 December 2012, the trial court issued an

order pursuant to an application under 18 U.S.C. § 2703(d)1 authorizing AT&T to

provide law enforcement officers with “cell site information including latitude,

longitude, sector azimuth and orientation information” from 13 November 2012

through 12 December 2012, as well as “precision location/GPS, E911 locate or Mobile

Locate Service” from 11 December 2012 through 12 December 2012 for Defendant’s

cell phone. Such order required that law enforcement officers needed only to

 1 The other statutes referenced in the order were N.C. Gen. Stat. §§ 15A-261, 15A-262, and
15A-263. These statutes concern the application and approval procedures by which the State may
install or use either a pen register or a trap and trace device. Nonetheless, since Defendant does not
challenge any evidence gathered through these statutory mechanisms, and challenges only evidence
gathered pursuant to the authority conveyed by 18 U.S.C. § 2703(d) of the SCA, we need not undertake
an examination of these statutes.
 STATE V. PERRY

 McGEE, C.J., concurring

demonstrate “specific and articulable facts showing that there [we]re reasonable

grounds to believe that the contents of a wire or electronic communication, or the

records or other information sought, [we]re relevant and material to an ongoing

criminal investigation.” 18 U.S.C. § 2703(d) (2012). In other words, to obtain this

judicial order for Defendant’s cell phone information, law enforcement officers were

required to meet a “statutory standard [that wa]s less than the probable cause

standard for a search warrant.” See United States v. Davis, 785 F.3d 498, 505 (11th

Cir. 2015).

 On appeal, Defendant challenged the issuance of the judicial order with which

law enforcement officers obtained the cell site information for Defendant’s cell phone

from AT&T for 11 December 2012 on 11 December 2012 as an erroneous

authorization of an unconstitutional search using “real-time”2 information obtained

from Defendant’s cell phone without establishing probable cause and securing a

warrant before conducting this search. Law enforcement officers — as well as the

 2 While some courts have determined that “real-time” cell site information is a subset of
“prospective” cell site information, see In re U.S. for an Order Authorizing Installation & Use of a Pen
Register (Maryland Cell Site Case), 402 F. Supp. 2d 597, 599 (D. Md. 2005), “[c]ourts generally use
both ‘prospective’ and ‘real-time’ interchangeably to refer to this type of data.” United States v. Espudo,
954 F. Supp. 2d 1029, 1034 n.1 (S.D. Cal. 2013). An example given to illustrate the distinction between
these terms is as follows: “[I]magine the government receives a court order on a Monday granting
access to prospective cell site information (i.e. all cell site information generated going forward). On
Thursday, the government begins tracking the phone in real time; such information is both prospective
and real time cell site information. On Friday, the government goes back and accesses the records of
the phone’s location on Tuesday and Wednesday; such information is prospective but not real time cell
site information.” Maryland Cell Site Case, 402 F. Supp. 2d at 599 n.5. However, in order to more
plainly distinguish “real-time” or “prospective” cell site information from “historical” cell site
information, I use the term “real-time” cell site information to encapsulate both “real-time” and
“prospective” information, except when directly quoting other cases that use the term “prospective.”

 2
 STATE V. PERRY

 McGEE, C.J., concurring

majority opinion — described the information obtained from AT&T as “historical”

information, rather than “real-time” information. I believe the majority’s

characterization of the information acquired from AT&T as “historical,” rather than

“real-time,” is incorrect.

 “Cell phones operate through the use of radio waves. To facilitate cell phone

use, cellular service providers maintain a network of radio base stations — also

known as cell towers — throughout their coverage areas.” In re Application for Tel.

Info. Needed for a Crim. Investigation (California Cell Site Case),

No. 15-XR-90304-HRL-1(LHK), __ F. Supp. 3d __, __ (N.D. Cal. July 29, 2015). “Most

cell towers have multiple cell sectors (or ‘cell sites’) facing in different directions.” Id.

at __. “A cell site, in turn, is a specific portion of the cell tower containing a wireless

antenna, which detects the radio signal emanating from a cell phone and connects

the cell phone to the local cellular network or Internet.” Id. at __; see United States

v. Graham (Graham II), Nos. 12-4659 and 12-4825, __ F.3d __, __ (4th Cir. Aug. 5,

2015) (“Cell sites are placed at various locations throughout a service provider’s

coverage area and are often placed on towers with antennae arranged in sectors

facing multiple directions to better facilitate radio transmissions.”).

 “Whenever a cell phone makes or receives a call, sends or receives a text

message, or otherwise sends or receives data, the phone connects via radio waves to

an antenna on the closest cell tower, generating [cell site location information].”

 3
 STATE V. PERRY

 McGEE, C.J., concurring

California Cell Site Case, __ F. Supp. 3d at __; Graham II, __ F.3d at __ (“A cell phone

connects to a service provider’s cellular network through communications with cell

sites, occurring whenever a call or text message is sent or received by the phone.”).

“When the phone connects to the network, the service provider automatically

captures and retains certain information about the communication, including

identification of the specific cell site and sector through which the connection is

made.” Graham II, __ F.3d at __. “By identifying the nearest cell tower and sector,

[cell site location information] can be used to approximate the whereabouts of the cell

phone at the particular points in time in which transmissions are made.” Id. at __.

“The cell sites listed can be used to interpolate the path the cell phone, and the person

carrying the phone, travelled during a given time period.” Id. at __. “The precision

of this location data depends on the size of the identified cell sites’ geographical

coverage ranges.” Id. at __.

 As commonly used, “historical” cell site location data “refers to the acquisition

of cell site data for a period retrospective to the date of the order, whereas ‘prospective’

or ‘real-time’ cell site data refers [to] the acquisition of data for a period of time going

forward from the date of the order.” Espudo, 954 F. Supp. 2d at 1034. In other words,

“‘[r]eal time’ cell site information refers to data used by the government to identify

the location of a phone at the present moment . . . [and] refers to all cell site

information that is generated after the government has received court permission to

 4
 STATE V. PERRY

 McGEE, C.J., concurring

acquire it,” Maryland Cell Site Case, 402 F. Supp. 2d at 599; see also United States v.

Graham (Graham I), 846 F. Supp. 2d 384, 391 n.7 (D. Md. 2012) (“In a more invasive

search, the government will request that the carrier retain records for all of a

handset’s automatic registrations, which occur approximately every seven to ten

minutes. Such a request is prospective, as it asks for data generated after the court’s

order or warrant and involves data being generated and turned over to law

enforcement in real time, or close to it.” (second emphasis added)), aff’d by Graham II,

Nos. 12-4659 and 12-4825, __ F.3d __ (4th Cir. Aug. 5, 2015), and “encompasses only

that location information that already has been created, collected, and recorded by

the cellular service provider at the time the court authorizes a request for that

information.” In re U.S. for an Order Authorizing Disclosure of Location Info. of a

Specified Wireless Tel., 849 F. Supp. 2d 526, 535 n.4 (D. Md. 2011). However,

“[r]ecords stored by the wireless service provider that detail the location of a cell

phone in the past (i.e.: prior to entry of the court order authorizing government

acquisition) are known as ‘historical’ cell site information.” Maryland Cell Site Case,

402 F. Supp. 2d at 599.

 As the majority recognizes, most federal courts that have considered this issue

have concluded that a request from law enforcement for real-time cell site information

 5
 STATE V. PERRY

 McGEE, C.J., concurring

pursuant to the SCA requires probable cause,3 while a request for historical cell site

information requires only specific and articulable facts. Thus, the characterization

of information as “historical” or “real-time” — and, thus, the standard to which law

enforcement must adhere in order to obtain such information — rests upon whether

the information sought was generated before or after the issuance date of the order

authorizing the transmission of information pursuant to 18 U.S.C. § 2703.

 In the present case, law enforcement officers filed an application pursuant to

18 U.S.C. § 2703(d) on 11 December 2012:

 Requesting complete call detail records (see below), with
 cell site information including latitude, longitude, sector
 azimuth and orientation information for the target
 telephone number(s)[.]

 Requesting precision location/GPS, E911 locate or Mobile
 Locate Service if applicable from December 11, 2012
 through December 12, 2012 for the phone number(s) listed
 below and additionally upon request, precision
 location/GPS for an additional thirty (30) days from the end
 date of this order for any new number(s)
 identified/associated with the account or account holder(s)
 as a result of account modifications[.]

Evidence presented at trial established that AT&T sent emails at regular intervals

to law enforcement officers on 11 December 2012, that such emails contained

 3 See, e.g., In re U.S. for Orders Authorizing Installation & Use of Pen Registers, 416 F. Supp.
2d 390, 391 (D. Md. 2006); In re U.S. for an Order Authorizing Installation & Use of a Pen Register,
415 F. Supp. 2d 211, 214 (W.D. N.Y. 2006); In re U.S. for an Order (1) Authorizing the Use of a Pen
Register, 396 F. Supp. 2d 294, 300 (E.D. N.Y. 2005); In re Application for Pen Register, 396 F. Supp. 2d
747, 765 (S.D. Tex. 2005).

 6
 STATE V. PERRY

 McGEE, C.J., concurring

longitude and latitude coordinates of Defendant’s cell phone as captured by AT&T’s

cell tower sites, and that the information provided by AT&T was sent with a

frequency and contemporaneousness with Defendant’s then-current location — from

somewhere between every five to seven minutes to every fifteen minutes — to allow

law enforcement to track Defendant’s location, through the information provided by

AT&T, to a hotel where Defendant was physically located. For instance, one law

enforcement officer testified that, by using the coordinates from AT&T, law

enforcement “w[as] able to say for sure that [Defendant’s cell phone] was in that

hotel.”

 However, the majority has determined that the information acquired from

AT&T was “historical,” based on the following testimony: (1) that there was “probably

a five- or seven-minute delay” from when Defendant’s cell phone connected with the

cell tower sites; (2) that “AT&T emailed the delayed recorded information to [the law

enforcement officer] every fifteen minutes[;]” and (3) that law enforcement did not

receive the information directly from Defendant’s cell phone but, instead, had to enter

the coordinates provided from AT&T’s “stored records” “into a Google Maps search

engine to determine the physical location of the last tower ‘pinged.’”

 Because most federal courts recognize that historical cell site information

consists of information generated prior to the issuance date of a judicial order that

allowed law enforcement to obtain such records for a given defendant, and because I

 7
 STATE V. PERRY

 McGEE, C.J., concurring

believe allowing the majority’s characterization of the information provided by AT&T

to law enforcement, based on the facts in this case, would effectively obliterate the

distinction between “historical” and “real-time” cell site information, I must

respectfully disagree with the majority’s characterization. Nevertheless, because I

agree with the majority opinion that the good-faith exception to the Fourth

Amendment warrant requirement would allow the challenged evidence to stand, I

decline to undertake an examination of whether the majority properly concluded that

Defendant had a reasonable expectation of privacy in the real-time cell site

information obtained by law enforcement from AT&T in light of Graham II and

California Cell Site Case.

 8